THE B&F CORPORATION v. CAVERS
2022 OK CIV APP 35
Case Number: 120024
Decided: 09/23/2022
Mandate Issued: 10/19/2022
DIVISION IV
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION IV
Cite as: 2022 OK CIV APP 35, __ P.3d __

 
THE B&F CORPORATION, d/b/a OK LOAN SERVICE, Plaintiff/Appellee,
v.
KELLIE C. CAVERS, Defendant/Appellant.
APPEAL FROM THE DISTRICT COURT OF
OKLAHOMA COUNTY, OKLAHOMA
HONORABLE TRENT PIPES, TRIAL JUDGE
AFFIRMED
Scott K. Suchy, CORPORATE COUNSEL, THE B&F CORPORATION, Oklahoma City, Oklahoma, for Plaintiff/Appellee
Victor R. Wandres, PARAMOUNT LAW, Tulsa, Oklahoma, for Defendant/Appellant
DEBORAH B. BARNES, PRESIDING JUDGE:
¶1 In this small claims proceeding, Kellie C. Cavers appeals from the trial court's order prohibiting her attorney-in-fact from appearing in the proceedings and from its order granting judgment to The B&F Corporation d/b/a OK Loan Service (Plaintiff). We affirm.
BACKGROUND
¶2 Plaintiff filed its Affidavit of small claims on December 18, 2020, in which it alleged Ms. Cavers was indebted to it in the amount of $198 because she failed to pay on a loan contract. Ms. Cavers was personally served on October 7, 2021. An Alias Affidavit dated September 17, 2021, was attached to the service of process as was an order informing Ms. Cavers that the matter was set to be heard in the small claims court on October 20, 2021.
¶3 Ms. Cavers appeared at the October 20 hearing. Before turning to the merits of the claim, the trial court addressed a preliminary issue: a request by a Mr. Vance Dotson "to represent [Ms. Cavers] in this proceeding under" a Limited Power of Attorney (POA) he and Ms. Cavers executed that day. The trial court accepted the POA into evidence. Through the POA, Ms. Cavers appointed Mr. Dotson as her agent and attorney-in-fact to act for her in numerous capacities including "act[ing] for [her] in any lawful way in credit and debt matters, claims and litigation," and "defend[ing] against . . . a legal entity" before a court. Mr. Dotson informed the court he is "not an attorney" and "never represented [himself] as an attorney." After questioning Mr. Dotson further, the trial court ruled that he was misapplying the provisions of the Uniform Statutory Form Power of Attorney Act, 15 O.S. 2021 §§ 1001-1020, and that pursuant to the rules governing the Oklahoma Bar Association, 5 O.S. 2021, ch.1, app.1, art. II, § 7(a), it could not allow Mr. Dotson to appear and represent Ms. Cavers. The court excused Mr. Dotson.
¶4 Turning to the merits of the case, the court asked Ms. Cavers, "Do you wish to proceed? He can't act as your attorney." She answered, "Honestly, no," to which Mr. Suchy, counsel for Plaintiff, stated: "Your Honor, I move for a default. I have a contract signed by Ms. Cavers." Ms. Cavers stated: "Which that's on my credit report, if I'm not mistaken." At this point the court said:
If we're going to get into sworn testimony here, then I'll swear you in, I'll swear the parties in, and we can take testimony on it.

. . . .
. . . The reason for the requested continuance [was] because Mr. Dotson was not prepared. That is what [Mr. Dotson] alluded to. So his being prepared to proceed with this matter is of little consequence to the Court. So, anybody that is going to testify, raise your right hand.
(Parties sworn in.) 

¶5 Mr. Suchy presented Ms. Cavers with a document titled "Loan Note" dated October 21, 2019. She agreed she signed that document and that it is the contract she had with Plaintiff. The following exchange occurred:
Mr. Suchy: . . . [A]nd in this contract do you agree to make a total amount of payment of $120, yes?
Ms. Cavers: No.
Mr. Suchy: So this is not the contract you signed?
Ms. Cavers: It wasn't for $120.
Mr. Suchy: Okay. What is your memory of it?
Ms. Cavers: I don't remember -- 
Ms. Cavers further testified she has made no payments on the loan because she lost her job. She testified she did not remember that she was obligated to make three payments of $40 each beginning November 2019 but did remember she would be charged a late fee of $26 if she missed a payment. Upon inquiry from the court, Ms. Cavers repeated that she was unable to make any payment because she lost her job and her house. However, in answer to the court's question, "But you don't deny the debt? I mean, it happened, you just couldn't pay it back?" she replied, "Yeah."
¶6 The court entered judgment for Plaintiff in the amount of $198 (the total of the loan amount and three late fee charges). It is from the court's ruling regarding Mr. Dotson's dismissal from the proceedings and its judgment for Plaintiff that Ms. Cavers appeals.
STANDARD OF REVIEW
¶7 To the extent this appeal concerns issues of constitutionally protected rights or of statutory interpretation, the issue is one of law that we review de novo. Troxell v. Okla. Dep't of Human Servs., , ¶ 4, . Under a de novo standard of review, "an appellate court claims for itself plenary independent and non-deferential authority to reexamine a trial court's legal rulings." Kluver v. Weatherford Hosp. Auth., , ¶ 14, (citation omitted).
¶8 The trial court's factual determinations and evidentiary rulings, however, are reviewed for an abuse of discretion. "An abuse of discretion occurs when a court bases its decision on an erroneous conclusion of law or where there is no rational basis in evidence for the ruling." Gowens v. Barstow, , ¶ 11, (citation omitted). "Under an abuse of discretion standard, the appellate court examines the evidence in the record and reverses only if the trial court's decision is clearly against the evidence or is contrary to a governing principle of law." Curry v. Streater, , ¶ 8, (citation omitted).
¶9 Ms. Cavers argues the trial court's findings regarding her indebtedness are erroneous because without a properly authenticated loan contract, there was no evidence in the record tending to support her indebtedness. "With respect to determinations of fact in a small claims proceeding, this Court's standard of review is that '[i]f there is any evidence tending to support the findings and judgment of the trial court . . . , the findings and judgment will not be disturbed, even if the record might support a conclusion different from that reached at nisi prius." Morris v. Behrens, , ¶ 4, (citation omitted).
ANALYSIS
I. Trial Court's Denial of Appearance of Attorney-in-fact
¶10 Ms. Cavers argues the trial court erred as a matter of law in its interpretation of several applicable statutes, and argues, in effect, the court's concept of what conduct constitutes the practice of law was an abuse of discretion. We disagree.
¶11 Oklahoma jurisprudence has long held that pro se litigants are held to the same standard as a licensed attorney and must comply with the same rules of procedure and evidence. Funnell v. Jones, , ¶ 4, . Thus, while a pro se litigant has the right in civil proceedings to represent himself and make legal arguments on his own behalf, he does so at his own peril. As correctly stated by Ms. Cavers, in small claims proceedings, however, the technicalities of evidentiary and procedural rules are relaxed; consequently, the simplified procedure in small claims proceedings should make the need for an attorney unnecessary, or less necessary, with regard to those issues. See Black v. Littleton, , ¶ 6, . See also Thayer v. Phillips Petroleum Co., , ¶ 5, ("The exegesis behind the small claims court is to open the courts to the citizenry. A person does not need a lawyer to appear. The normal rules of evidence are not applied. The jurisdiction may be invoked by payment of a nominal fee. The small claims court provides redress for the ordinary person."). The peril a pro se litigant might otherwise face is thus lessened in a small claims proceeding. As noted by the Black Court:
It appears the intended purpose of the Small Claims Act was to establish an informal court, void of rigid restrictions with little or no regard to the technicalities pertaining to the rules of evidence, and the assumption by the judge of direct affirmative authority to control all aspects of a hearing with the sole object of dispensing speedy justice between the parties. This intent is evidenced by the fact that actions brought under the Small Claims Act, 12 O.S. 1971 § 1751 et seq., may be heard by any judge of the district court; the judgment is a judgment of the district court and appeals are taken directly to the Supreme Court.
, ¶ 5. The issues presented on appeal are who may appear for a party in a small claims proceeding and what action may that person take on behalf of a party.
¶12 Ms. Cavers relies on an Attorney General (AG) Opinion in which the following question was posed: "May a person holding a Power of Attorney . . . appear on behalf of his or her principal as a party in small claims court without the assistance of legal counsel?" Question Submitted by: The Hon. Jerry L. Smith, State Senator, Dist. 39, . Quoting the forgoing reasoning from Black, the AG Opinion examined the provisions of the Uniform Statutory Form Power of Attorney Act, 15 O.S. 2021 §§ 1001-1020. In particular, the AG Opinion notes §§ 1005 and 1014 of the statute. In addition, the AG Opinion acknowledges the Oklahoma Supreme Court's constitutional authority, "independent of the Legislative Department, to control and regulate the practice of law in all its forms, and to prevent the intrusion of unlicensed persons into the practice . . . ." , ¶ 8 (quoting R.J. Edwards, Inc. v. Hert, , ¶ 18, ). The AG Opinion acknowledges that pursuant to that authority the Supreme Court promulgated rules creating and controlling the Oklahoma Bar Association, which rules, among other things, determine who may practice law in Oklahoma; that is, only those licensed to practice law in this State.
¶13 As to small claims proceedings, the AG Opinion quotes 5 O.S., ch. 1, app. 1, art. II § 6, as follows:
In action filed and tried under the Small Claims Procedure Act (12 O.S. Supp. 1969, Section 1751 et seq.) the word "person" and "claimant" as therein used shall include corporations, partnerships, trusts and other legal entities, so that corporations, partnerships, trusts and other legal entities may, by and through a corporate officer or regular full-time employee, execute the statutory affidavits and proceed as any other person or claimant is authorized to proceed under the act.
From this the AG Opinion then concludes:
Therefore, a person holding a Power of Attorney . . . may be authorized by his or her principal under 15 O.S. 2001, § 1005 . . . to appear as a substitute for the principal in small claims court and personally prosecute or defend the principal's case, and if he or she chooses, without the assistance of legal counsel. Further, a holder of a Power of Attorney . . . does not become a separate legal entity; rather, he or she holds powers delegated by the principal to an agent who must be a legal person. However, a person may not use a Power of Attorney . . . to substitute for a lawyer licensed by the Supreme Court of Oklahoma, when the services of an active member of the Oklahoma Bar Association are required. 5 O.S. 2001, ch. 1, app. 1, art. II, § 7. The determination of when services of a licensed lawyer are required is an issue of fact which cannot be answered in an Attorney General Opinion. 74 O.S. 2001, § 18(b)(A)(5).
, ¶ 11.
¶14 As acknowledged by Ms. Cavers, "while a published Attorney General Opinion may be persuasive authority for a court, courts are not bound by the Opinion of the Attorney General." Edwards v. Bd. of Cnty. Comm'rs of Canadian Cnty., , ¶ 15, (citation omitted). The Oklahoma Supreme Court, however, addressed the weight to be given an AG Opinion interpreting a statute in Oklahoma Public Employees Association v. State ex rel. Oklahoma Office of Personnel Management, , (per curium), in which the Court presumed the Legislature agreed with a 2009 AG Opinion at issue. Relying on its prior decisions, the Supreme Court reasoned:
In analyzing the weight to be given to the Attorney General's opinion, we note that, like opinions of the Court of Criminal Appeals and the Court of Appeals, the writings are considered as persuasive authority. Here, however, the Attorney General's analysis carries more weight in determining the issues before the Court. It does so because the Legislature has not acted since the opinion was promulgated. Undoubtedly, it did not do so because it understood that this Court considers the Legislature's silence as acquiescence or approval of the law as expounded in an Attorney General opinion. 
, ¶ 24 (footnote omitted). In the present case, the AG Opinion was issued in 2003 and no legislative action has been taken in the nearly twenty years since. Thus, pursuant to Oklahoma Public Employees Association, we presume the Legislature's silence is acquiescence in or approval of the law as interpreted in that AG Opinion.
¶15 Nevertheless, even presuming the AG Opinion states a correct interpretation of §§ 1005 and 1014, that the attorney-in-fact may appear and defend in substitution for the principal in small claims court, the question remains whether the trial court abused its discretion and erroneously determined that the actions Mr. Dotson sought to undertake on behalf of Ms. Cavers crossed into the unlawful practice of law; that is, in determining that he was attempting to provide services that require a licensed attorney to provide.
¶16 Ms. Cavers argues small claims proceedings do not require the services of a licensed attorney and points to the AG Opinion in which it is stated: "a person may not use a Power of Attorney . . . to substitute for a lawyer licensed by the Supreme Court of Oklahoma, when the services of an active member of the Oklahoma Bar Association are required." Ms. Cavers argues the word "require[s]" is pivotal and is rendered meaningless if Mr. Dotson, as her attorney-in-fact, is not permitted to appear. We reject this narrow definition of "required" in this context. Rather, we conclude the requirement to be that when one undertakes to provide services to another that only a licensed attorney can provide, that person is providing legal services. R.J. Edwards, Inc., , ¶ 20 ("Our decisions definitely spell out the concept of the practice of law: the rendition of services requiring the knowledge and the application of legal principles and technique to serve the interests of another with his consent."). "The distinction between law practice and that which is not may be determined only from a consideration of the acts of service performed in each case." Id. ¶ 23 (citation omitted) (internal quotation marks omitted). Thus, it is the nature of the service the person is providing or attempting to provide, not the forum, that determines whether "the services of an active member of the Oklahoma Bar Association [are] required."
¶17 Mr. Dotson did not act as a substitute for Ms. Cavers. Ms. Cavers was present and nothing in the record indicates she was incompetent to proceed. Indeed, Mr. Dotson agreed he was "attempting to represent" Ms. Cavers and made it clear that Ms. Cavers told the court "she wants me to assist her in this matter." Acknowledging that is what Ms. Cavers earlier told the court, the court stated, "And she said she would prefer somebody else work with her on that. She was referencing you."
MR. DOTSON: Let's clear it up. Okay. Yes. She was referencing me. And you asked me would, you know, would I let her directly talk to [Plaintiff's counsel], and I said no. And . . . plaintiff's attorney, continued to have communication with her, when I gave the proper documentation. And I want to put [the power of attorney] on the record. 
Mr. Dotson went on, stating that "we [he and Ms. Cavers] was coming (sic) to the Court just to ask for a continuance" for the reasons that Plaintiff was not present and Plaintiff's counsel could not testify about the records, and because there was an issue as to who the real party in interest is. As to this second issue, Mr. Dotson stated that was the reason "we was coming (sic) to the Court to ask for an extension and so we can go into discovery . . . ." He also later stated he wanted the continuance because of potential issues concerning consumer protection laws. Mr. Dotson then proceeded to argue with the court when it informed him "[t]here is no discovery in small claims."
¶18 The court made the specific finding that the actions Mr. Dotson wished to take were the unauthorized practice of law because he wanted to represent Ms. Cavers, and the court announced its ruling that Mr. Dotson was misapplying 15 O.S. § 1014. By his own statements and Ms. Cavers' statements to the court, Mr. Dotson was not appearing as an attorney-in-fact asserting a defense in substitution for Ms. Cavers; rather, he was appearing with Ms. Cavers "to assist her" and to make legal arguments on her behalf, and he was directing her with respect to whom she may or may not communicate or who may communicate with her. He was acting as Ms. Cavers' advocate in the proceeding; that action, the services he attempted to provide, is the practice of law regardless of Mr. Dotson's statement that he was not her lawyer.
¶19 Ms. Cavers further argues, however, that denying her the right to have her attorney-in-fact appear on her behalf is a denial "of her fundamental constitutional right to make decisions affecting litigation," thus implicating her due process right to "life, liberty, or property" under both the United States and Oklahoma Constitutions. Ms. Cavers also quotes from Towne v. Hubbard, , , in which the Oklahoma Supreme Court stated: "It is also grounded in the due process right of an individual to make decisions affecting litigation placing his or her liberty at risk." Id. ¶ 14 (footnote omitted). However, the full reasoning of the Court is as follows:
The right to the assistance of legal counsel includes the right to be represented by a legal practitioner of one's own choosing. In Powell v. Alabama, [287 U.S. 45 (1932)], the United States Supreme Court stated, "It is hardly necessary to say that the right to counsel being conceded, a defendant should be afforded a fair opportunity to secure counsel of his own choice." This right to select counsel without state interference is implied from the nature of the attorney-client relationship within the Anglo-American adversarial system of justice, wherein an attorney acts as the personal agent of the client and not of the state. It is also grounded in the due process right of an individual to make decisions affecting litigation placing his or her liberty at risk. Legal practitioners are not interchangeable commodities. Personal qualities and professional abilities differ from one attorney to another, making the choice of a legal practitioner critical both in terms of the quality of the attorney-client relationship and the type and skillfulness of the professional services to be rendered.
Id. (footnotes omitted). We agree that Ms. Cavers has a constitutionally protected due process right to be represented in court by an attorney of her choice; she does not, however, have a due process right to be represented by a non-lawyer. Ms. Cavers concedes that her due process and equal protection rights are not violated by the licensing requirements of the Oklahoma Supreme Court and its rules governing the Oklahoma Bar Association.
¶20 We also find unpersuasive Ms. Cavers' argument that her constitutionally protected right to equal protection of the laws was violated because that argument, too, is premised on her contention that legal services are not being rendered within the context of a small claims proceeding. While we will not speculate about hypothetical situations, we recognize there may indeed be instances where an agent, pursuant to a power of attorney, could appear as a substitute for the principal in a small claims proceeding. This case, however, does not present such a situation.
¶21 We conclude, under the facts of this case, the trial court's decision is not clearly against the weight of the evidence or contrary to a governing principle of law. Consequently, we further conclude the trial court did not abuse its discretion in prohibiting Mr. Dotson from representing Ms. Cavers in this case
II. Authentication of Loan Contract and Sufficiency of Evidence
¶22 Ms. Cavers argues the trial court abused its discretion in allowing Plaintiff's counsel to authenticate the loan contract and "[w]ithout a properly authenticated contract, there was not 'any evidence' in the record tending to support the finding that [she] was indebted to [Plaintiff] for the amount alleged or any other amount." She argues neither the testimony of Plaintiff's counsel nor her own testimony authenticates the contract. We disagree.
¶23 "Authentication may be defined as the act of giving legal authority to a written instrument or a certified copy thereof, so as to render it legally admissible into evidence." Concannon v. Hampton, , ¶ 7, (footnote omitted). Pursuant to 12 O.S. 2021 § 2901(A), "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims it to be." Further, § 2901(B) provides "illustrative examples of authentication or identification conforming with the requirements of [the Oklahoma Evidence Code]," including "[t]estimony that a matter is what it is claimed to be[.]" "The genuineness of a written instrument and its execution may be proven by indirect or circumstantial evidence." Globe Automatic Sprinkler Co. v. Braniff, , ¶ 0, (Syllabus by the Court). As quoted by Ms. Cavers, "the proponent must provide some proof of [the document's] genuineness other than the writing itself before [the document] is admissible." New v. State, , ¶ 9, . Cf. Crowder State Bank v. Am. Powder Mills, , ¶ 0, (Syllabus by the Court) (Testimony of a witness that he saw an instrument signed held to authorize its introduction in evidence over the objection that it had not been identified.).
¶24 Contrary to Ms. Cavers' argument, she testified to more than merely the presence of her signature on the contract. She agreed that it was the contract she had with Plaintiff. While she testified the contract was not for $120, she did not remember what the amount was but she did not dispute the offered document was the contract she had with Plaintiff. The court admitted the contract "[Ms. Cavers] identified."
¶25 Despite Ms. Cavers' characterization of the evidence, we conclude the evidence was sufficient to support the trial court's finding that the loan contract was what Plaintiff claimed it to be. Further, Ms. Cavers' testimony supports the court's finding that she failed to make any of the payments or late charges required under the loan contract. We, therefore, conclude the trial court did not abuse its discretion in rendering judgment against Ms. Cavers for $198.
CONCLUSION
¶26 Based on the law and applicable facts, we conclude the trial court's determination that Ms. Cavers' attorney-in-fact sought to improperly represent her in this small claims proceeding was not contrary to a controlling principle of law nor clearly against the weight of the evidence; thus, the court's determination was not an abuse of discretion. We also conclude that Ms. Cavers' constitutionally protected rights to due process and equal protection of the law were not violated by the court's refusal to allow a non-attorney to represent her in this small claims court proceeding. We further conclude the court had sufficient evidence of identification and authentication of the loan contract at issue to allow its admission into evidence and its judgment for Plaintiff is supported by the evidence. Accordingly, we affirm.
¶27 AFFIRMED.
FISCHER, C.J., and HIXON, J., concur.
FOOTNOTES
 As noted by Ms. Cavers in her appellate briefs, some matters concerning this case apparently took place off the record. No transcript or narrative statement of that matter is in the appellate record; however, reference is made to some of those matters in the transcript that has been submitted on appeal.
 According to the terms of the POA, it was to "terminate upon subsequent disability, incapacity, or extended absence of the principal."
 See https://www.sos.ok.gov/gov/annualDistribution.aspx.
 The court also stated its intention to forward Mr. Dotson's actions to the Oklahoma Bar Association for further investigation. Id. § 7(c).
 Plaintiff's application for attorney fees was reserved.
 The Act has not been amended since its enactment on November 1, 1998.
 Section 1005 provides, in part, as follows:
By executing a statutory power of attorney with respect to a subject listed in subsection A of Section 1 of this act, the principal, except as limited or extended by the principal in the power of attorney, empowers the agent, for that subject to:
. . . .

4. Prosecute, defend, submit to arbitration, settle, and propose or accept a compromise with respect to, a claim existing in favor of or against the principal or intervene in litigation relating to the claim[.]

 Section 1014 provides:
In a statutory power of attorney, the language with respect to claims and litigation empowers the agent to:
1. Assert and prosecute before a court or administrative agency a claim, a cause of action, counterclaim, offset, and defend against an individual, a legal entity, or government, including suits to recover property or other thing of value, to recover damages sustained by the principal, to eliminate or modify tax liability, or to seek an injunction, specific performance, or other relief;
2. Bring an action to determine adverse claims, intervene in litigation, and act as amicus curiae;
3. In connection with litigation, procure an attachment, garnishment, libel, order of arrest, or other preliminary, provisional, or intermediate relief and use an available procedure to effect or satisfy a judgment, order, or decree;
4. In connection with litigation, perform any lawful act, including acceptance of tender, offer of judgment, admission of facts, submission of a controversy on an agreed statement of facts, consent to examination before trial, and binding the principal in litigation;
5. Submit to arbitration, settle, and propose or accept a compromise with respect to a claim or litigation;
6. Waive the issuance and service of process upon the principal, accept service of process, appear for the principal, designate persons upon whom process directed to the principal may be served, execute and file or deliver stipulations on the principal's behalf, verify pleadings, seek appellate review, procure and give surety and indemnity bonds, contract and pay for the preparation and printing of records and briefs, receive and execute and file or deliver a consent, waiver, release, confession of judgment, satisfaction of judgment, notice, agreement, or other instrument in connection with the prosecution, settlement, or defense of a claim or litigation;
7. Act for the principal with respect to bankruptcy or insolvency proceedings, whether voluntary or involuntary, concerning the principal or some other person, with respect to a reorganization proceeding, or a receivership or application for the appointment of a receiver or trustee which affects an interest of the principal in property or other thing of value; and

8. Pay a judgment against the principal or a settlement made in connection with litigation and receive and conserve money, or other thing of value paid in settlement of or as proceeds of a claim or litigation.

 The AG Opinion notes 5 O.S. 2001, ch. 1, app. 1, art. II §§ 1 & 7 .
 While various provisions of the Small Claims Procedure Act have been amended since 1969, see, e.g., 12 O.S. Supp. 2019 § 1071, those amendments are not germane to the issues in the present case.
 In this regard we note, the trial court stated several times that Mr. Dotson was "misreading," and "misapplying" § 1014, and expressed its concern that Mr. Dotson sought to "represent" Ms. Cavers.
 (Emphasis added.)
 (Emphasis added.)
 The court questioned the attorney for Plaintiff and determined that as in-house counsel he could testify about Plaintiff's records relevant to this case because he was familiar with the books and records of the company and he could identify the particular documents in this case "as regularly kept in [his] office." Counsel also stated, however, he could prove his case just through Ms. Cavers' testimony.
 (Emphasis added.)
 Title 12 O.S. § 1760 provides, in part, as follows: "No depositions shall be taken or interrogatories or other discovery proceeding shall be used under the small claims procedure except in aid of execution." Mr. Dotson was not pressing for discovery permitted in execution of a judgment but referenced the Oklahoma consumer protection laws. Nothing in the record shows Ms. Cavers pursued any of the procedures and requirements set forth in §§ 1756-58.
 The trial court repeatedly stated its concern about Mr. Dotson's statements and actions concerning representation of Ms. Cavers.
 We also note the record reflects that as Mr. Dotson was leaving the courtroom, according to the uncontradicted statement of Mr. Suchy, Mr. Dotson told Ms. Cavers "not to admit anything."
 Ms. Cavers quotes 5 O.S., ch. 1, app. 1, art. II, § 6 of the Oklahoma Supreme Court's Rules Creating and Controlling the Oklahoma Bar Association and asserts "the appearance of non-attorney agents is already permitted in the case of business[] entities presumably because, in small claims court, that appearance does not require legal expertise and does not constitute the practice of law." She argues:
No Oklahoma Court has held that the employees of a corporation are allowed to engage in the unlicensed practice [of] law in small claims court. The practice is permissible because it is not the practice of law. Just as [Plaintiff] could have elected to appear through its non-attorney agent, [she] should have been permitted to appear through her non-attorney agent Mr. Dotson.
We disagree with Ms. Cavers' presumption and conclusion about what the meaning of the Supreme Court's rule allowing a non-attorney corporate employee or corporate officer to appear and represent the corporation in a small claims proceeding. There is no question that Ms. Cavers could appear on her own behalf in small claims court (or other courts) and represent herself in that proceeding. Article II, § 6 does no more than permit a corporation to do the same. It is axiomatic that a corporate entity, while a "person" in the eyes of the law, can only act through people. Article II, § 6 merely allows an avenue by which the corporate entity has the same ability as other persons to appear with or without an attorney in small claims proceedings. Consequently, assuming Ms. Cavers asserts this argument as a basis for her equal protection or due process claims, we find the argument unpersuasive.
 In that case a certain letter from the defendant had been lost but the trial court allowed the plaintiff, who testified he received the letter, to testify as to its contents. In affirming the trial court's ruling, the Braniff Court stated:
It appears that counsel for the defendant assume that there is absolutely no testimony in the record justifying the inference that the letter testified about by the plaintiff was ever signed by any official of the defendant company with authority to make a contract. This contention is untenable. Considering the conversation between the agent of the defendant company and the plaintiff, the correspondence between them, and all of the circumstances surrounding the transaction, we are clearly of the opinion that the evidence was sufficient to justify the introduction of the plaintiff's testimony as to the contents of the letter.
Id. ¶ 7.
 The Court stated the following deposition testimony was sufficient identification of the guaranty at issue:
Q. Mr. Lovejoy, at the bottom of the order, the original order which you have identified, are these words: "We agree to hold the amount of this bill out of funds due Mr. Lovejoy when same is received by us. Crowder State Bank, by J. B. Henderson, Cashier." I will ask you who wrote that portion of the order I have just read? A. Mr. Henderson wrote it. Q. Were you present when he wrote it? A. I was. Q. Do you know his signature? A. I do. Q. Is that the signature of J. B. Henderson? A. I think it is.
, ¶ 4.